James M. Dowd, Judge
A.C.C. (Juvenile) appeals from the judgment of the Juvenile Division of the Circuit Court of St. Charles County which adjudicated him to be delinquent pursuant to the provisions of § 211.031.1(3)[1] and committed him to the custody of the Division of Youth Services. For the reasons set forth below, we affirm.
Factual and Procedural Background
The petition filed in this case by the juvenile officer alleged Juvenile, age 15 at the time of the offense, had deviate sexual intercourse with D.D., a minor less than age 14. The petition alleged Juvenile's conduct if committed by an adult would warrant a charge of felony statutory sodomy in the first degree in violation of § 566.062.
On October 16, 2017, the juvenile court held a joint adjudication and disposition hearing. During the adjudication portion of the hearing, Juvenile's counsel informed the court that Juvenile was "a little bit conflicted all of a sudden." After a brief recess, and a conversation between Juvenile and his counsel, Juvenile took the stand. Juvenile's father objected to his son taking the stand, which prompted the court to respond that the hearing would proceed "because I do think it's in your son's best interest to do so." While Juvenile was on the stand, his counsel introduced a waiver of rights and stipulation to jurisdiction form which Juvenile and counsel had previously signed. Pursuant to that document, Juvenile stipulated that the facts underlying the charges in the petition were accurate, that he was not under the influence of alcohol or drugs when he signed the stipulation, and that he waived certain rights, including the right to trial with the assistance of counsel.
Although Juvenile equivocated at certain points during his testimony, he testified that he understood that he possessed the following rights but that he was waiving them: to deny the charges against him, to trial, to counsel, to question any witness called against him, to remain silent, and to not testify. The court informed Juvenile that if it accepted Juvenile's waiver he would not be allowed to live within 1,000 feet of the victim until the victim reached the age of 18. At that point Juvenile asked whether, pursuant to the disposition, he would have to register as an adult sex offender. Both the juvenile officer's counsel *428 and the court represented to Juvenile that he would not have to do so.
The court then asked Juvenile for the second time whether he understood he was giving up his right to trial. Juvenile responded "yes and no." After counsel reminded Juvenile of their previous conversation, Juvenile responded "Okay. I guess." Juvenile, however, again stated that he did not really understand and that his "brain ain't working." At that point, Juvenile's mother stated Juvenile should "plead guilty," which prompted Juvenile to respond, "That's what I want to do." Juvenile's counsel then said "[i]t just means that you're pleading guilty instead of having a trial. And that's what you-you want to do and you understand that, right?" Juvenile responded in the affirmative.
The court asked Juvenile whether he understood that the court was not bound by the recommendations of counsel. Juvenile stated at first that he did not understand but after the court clarified its question Juvenile stated that he understood.
Then the juvenile officer outlined the evidence in support of the petition and the court asked Juvenile if that evidence was true. Juvenile admitted that it was. The court then found beyond a reasonable doubt that Juvenile committed an act that would have constituted felony statutory sodomy in the first degree in violation of § 566.062 if he were an adult, and as a result the juvenile court had jurisdiction over Juvenile pursuant to § 211.031.1 (3).
The court moved to the disposition portion of the hearing and entered its judgment committing Juvenile to the Division of Youth Services for an indefinite term and ordered him to register as a juvenile sex offender. The judgment did not require Juvenile to register as an adult sex offender. This appeal follows.
Standard of Review
The parties agree that Juvenile's sole point relied on was not preserved for appeal. Therefore, we review for plain error. Our analysis under plain error review requires a two-step process. First, we determine whether the trial court committed plain error, which is error that is "evident, obvious, and clear." State v. Ragland , 494 S.W.3d 613, 627 (Mo.App.E.D. 2016) (internal citations omitted). If we find plain error, we look to the second prong: whether, as a result of the error, a manifest injustice or miscarriage of justice actually occurred. Id.
Discussion
Juvenile asserts the juvenile court violated his right to due process when it accepted Juvenile's admission of the charges alleged in the petition. Specifically, Juvenile asserts that the record fails to show that his admission of the facts contained in the petition and his waiver of jurisdiction were done intelligently and voluntarily.
Juvenile proceedings are civil, not criminal, and are focused on continuing care, protection, and rehabilitation of the juvenile, not punishment. J. D. H. v. Juvenile Court of St. Louis County , 508 S.W.2d 497, 500 (Mo.banc 1974). Nevertheless, "civil labels and good intentions do not themselves obviate the need for criminal due process safeguards in juvenile courts, for a proceeding where the issue is whether the child will be found to be delinquent and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution." In re Winship, 397 U.S. 358, 365-66, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ; see also In re N.D.C. , 229 S.W.3d 602, 605 (Mo.banc 2007) ("[T]he constitutional protections applicable in criminal proceedings are also applicable in juvenile delinquency proceedings due to the possibility of a deprivation of liberty *429 equivalent to criminal incarceration."). While the Fourteenth Amendment[2] does not require juvenile delinquency proceedings to conform to all the requirements of a criminal trial,[3] the Due Process Clause does require adjudicatory hearings to apply "the essentials of due process and fair treatment." In re Winship, 397 U.S. at 359, 90 S.Ct. 1068 (quoting In re Gault , 387 U.S. 1, 13, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) ); see also T.S.G. v. Juvenile Officer , 322 S.W.3d 145, 149 (Mo.App.W.D. 2010) ("It has long been settled that due process and fair treatment are required in juvenile court adjudications....").
This Court has found no Missouri case specifically addressing due process in the context of the admission by a juvenile to the allegations contained in a juvenile officer's petition and the waiver of the right to trial. However, in In Interest of N.R.W., 482 S.W.3d 473, 477 (Mo.App.E.D. 2016), we recently addressed the constitutional implications of a juvenile's waiver of counsel in juvenile delinquency proceedings. In N.R.W., we held that the right to counsel is a fundamental right necessary to ensure fairness and that the constitutional protections for a juvenile to validly waive counsel are no less than what are afforded to adults in criminal proceedings. Id. We find N.R.W. persuasive to our analysis here.
And we find, therefore, that before waiving jurisdiction and admitting to the facts in a petition filed in a delinquency proceeding, juveniles are entitled to the same minimum due process rights afforded adult criminal defendants during guilty pleas. That is, "[a] plea must not only be a voluntary expression of the defendant's choice, it must also be a knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences of the act." Ramsey v. State , 182 S.W.3d 655, 658 (Mo.App.E.D. 2005) ; see also Simmons v. State, 429 S.W.3d 464, 467 (Mo.App.E.D. 2014), In re Winship , 397 U.S. at 359, 90 S.Ct. 1068.
We are mindful that because we are dealing with juveniles, the task for the court and all parties involved to ensure that the plea is intelligently and voluntarily made is sometimes not an easy one. The juvenile, with his or her emotional and intellectual limitations, is being asked to make decisions that may have profound effects in the future. We need look no further than the record in this case for an illustration of these difficulties. Here, Juvenile was being asked to either challenge the charges or to accept them and therefore accept the likelihood of being committed to the custody of the Division of Youth Services. Yet, while struggling to make this decision, Juvenile heard advice-often conflicting advice-from no fewer than four authority figures in his life: the court, Juvenile's attorney, his mother, and his father. Nevertheless, because our review of the record demonstrates that the court patiently ensured that Juvenile understood all the relevant issues and that his plea was intelligently and voluntarily made, we find no plain error warranting reversal.
I. Juvenile's equivocal answers and mental health issues did not make his plea involuntary.
Juvenile contends that his equivocal responses while on the stand together *430 with the mental health issues he has raised demonstrate that he did not voluntarily and intelligently admit to the facts contained in the petition. We disagree. Even where there has been equivocation, a plea can still be valid if it is clear that the plea was entered into knowingly and voluntarily. Lockhart v. State, 470 S.W.3d 778, 781 (Mo.App.E.D. 2015). A defendant's mental illness or need for psychiatric treatment may affect the voluntariness of a plea, but does not necessarily equate with incompetency to stand trial or plead guilty. Thomas v. State, 249 S.W.3d 234, 239 (Mo.App.E.D. 2008). Additionally, a trial court can make its own competency determination from its observations. Edwards v. State, 200 S.W.3d 500, 520 (Mo.banc 2006).
The hearing transcript here reflects that Juvenile was able to understand, follow, and meaningfully participate in the proceedings. Juvenile repeatedly requested that matters be either clarified or re-explained to him, which the court did. And the record further demonstrates that Juvenile expressed satisfaction and understanding with regard to each matter on which he had requested clarification or further explanation. Moreover, the stipulation indicated that Juvenile understood the rights he was waiving, and that he was not under the influence of drugs or alcohol.
Regarding Juvenile's claim that his alleged mental illness undermined the intelligent and voluntary nature of his waiver, the record indicates otherwise. Juvenile appeared to the court to understand the nature of the proceedings and the constitutional protections he was waiving, and he had the ability to consult his attorney. Juvenile actively participated in the hearing and appeared to understand and respond appropriately to the court. Here, the juvenile court was in the best position to assess whether Juvenile's waiver was knowing and voluntary, which necessarily includes the court's assessment of competency, and the record supports the court's decision. Wills v. State , 321 S.W.3d 375, 380 (Mo.App.W.D. 2010).
II. Juvenile incorrectly asserts that he was misled regarding his legal obligation to resister as an adult sex offender after he reaches age 21.
Juvenile next argues that he admitted to the facts in the petition because the court and the juvenile officer's counsel misled him when they assured him that he would not be required to register pursuant to Missouri's Sex Offender Registration Act (SORA)[4] as an adult sex offender when he reached age 21. Because we find Juvenile will not have to register as an adult sex offender upon reaching age 21, Juvenile was not misled and therefore his argument is without merit.
Pursuant to § 211.425.1, any person adjudicated delinquent by the juvenile court for committing a sex-related offense which would be considered a felony sex offense pursuant to Chapter 566 is required to register as a juvenile sex offender with the state. The juvenile registration requirement terminates when the offender reaches age 21. § 211.425.6. This section and its reporting requirement applies to Juvenile and to the offense to which he admitted.
However, our inquiry is focused on what, if any, registration requirement Juvenile will have when he reaches age 21. That question is determined by the application of the following statutory provisions: If the juvenile offender is 14 years of age or older at the time of the offense and "the offense adjudicated would be considered a felony under chapter 566 if committed by an adult, which is equal to or more severe *431 than aggravated sexual abuse under 18 U.S.C. § 2241," the juvenile offender is required to register as an adult sex offender. §§ 211.425.1 (emphasis added); see also 589.400.1(6) (same). So, if the offense for which Juvenile was adjudicated is considered equal to or more severe than federal aggravated sexual abuse, then Juvenile must register as an adult sex offender.
No Missouri court has addressed the specific issue before us. A review of federal case-law, applying the federal Sex Offender Registration & Notification Act (SORNA),[5] reveals two distinct approaches to determine whether a predicate offense is equal to or more severe than the referenced federal offense. The first, known as the "categorical" approach, looks only to the offense the individual was actually adjudicated for. In United States v. Morales, the court applied the categorical approach to determine whether the "offense ... is comparable to or more severe than" certain enumerated offenses. 801 F.3d 1, 4 (1st Cir. 2015). See also United States v. Barcus , 892 F.3d 228, 231-32 (6th Cir. 2018) ("To answer whether Tennessee aggravated sexual battery is [comparable to a specified federal offense], we join other circuits in applying the categorical approach.").
The second approach, known as the "non-categorical" approach, allows courts to look at the specific underlying facts of the offense in carrying out this comparison. For example, in United States v. Mi Kyung Byun , the court decided to apply the non-categorical approach to determine whether an "offense is ... comparable or more severe than" an enumerated federal offense, in part because the SORNA statute includes the phrase "when committed against a minor." 539 F.3d 982, 991 (9th Cir. 2008). The court reasoned that the term "committed" rather than "convicted" indicates courts can look beyond the statutory elements of a crime. Id. See also United States v. Hill , 820 F.3d 1003, 1005 (8th Cir. 2016) (applying the non-categorical approach to determine whether "prior offense involved 'conduct that by its nature is a sex offense against a minor' ").
Because Juvenile was adjudicated for an offense that we find to be less severe than federal aggravated sexual abuse (discussed infra ) but his underlying conduct was more severe than federal aggravated sexual abuse, it is dispositive whether we apply the categorical or non-categorical approach in the present case. That is, applying the categorical approach would mean that the court and counsel's representations that Juvenile would not have to register as an adult sex offender when he reached age 21 were accurate. But were we to adopt and apply the non-categorical approach, the representations would be inaccurate and misleading.
Based on the plain language of §§ 211.425.1 and 589.400.1(6), we adopt the categorical approach when determining whether the "offense adjudicated" is "equal to more severe" than federal aggravated sexual abuse. The use of the term "adjudicated" in the statutes is the key because it instructs us to look at what has been judicially decided, not at the underlying facts of the offense. Had the legislature intended that we examine the underlying facts to determine whether the predicate juvenile adjudication was "equal to or more severe" than federal aggravated sexual abuse, it would have used language such as "committed," "involved," or *432 "underlying conduct" instead of "adjudicated."
We are familiar with our previous decision in Doe v. Isom, and find the present case distinguishable. 429 S.W.3d 436 (Mo.App.E.D. 2014). In Doe, while we adopted a non-categorical approach to determine whether an adult defendant was required to register as a sex offender, the statutory language was critically different than here, The Court in Doe analyzed the term "offense" in determining to use the non-categorical approach and explicitly noted that the outcome would likely be different if the statute had used the term "convictions" rather than "offenses." Id. at 442. Because we find the term "adjudicated" to be synonymous with the term "convicted" and therefore distinct from the concept of "offense" which Doe dealt with, we find Doe distinguishable and therefore inapplicable to our analysis.
Additionally, the Attorney General of the United States has issued guidelines to interpret and implement SORNA, which are consistent with the result we reach here. See Office of the Attorney General; The National Guidelines for Sex Offender Registration and Notification, 73 Fed.Reg. 38030 (July 2, 2008). Congress, in inducing states to enact legislation similar to SORNA, intended for a narrowly-defined class of juvenile delinquency cases to be treated as equivalent to adult convictions for registration purposes. Id. at 38040. The underlying rationale was that certain sex offenses, such as rape, are so abhorrent that all such offenders are required to register including juveniles. Id. at 38041. This approach however is in conflict with the overall aim of juvenile proceedings: rehabilitation, care, and protection-not punishment. The Attorney General addressed this conflict by way of a culpability comparison between a 30-year-old engaging in sexual activity with an 11-year-old and a 14-year-old engaging in sexual activity with an 11-year-old. Id. at 38040. For this reason, the Attorney General stressed that states should have some discretion with regard to juveniles adjudicated delinquent on the basis of offenses which constitute aggravated sexual abuse due solely to the age of the victim. Id. at 38041.
The legislature's use of the term "adjudicated" is consistent with these principles as is the discretion exercised by the juvenile officer in this case in both (1) charging and seeking adjudication for an offense that is not equal to or more severe than the relevant federal offense even though the underlying facts may have allowed the juvenile officer to do so and (2) in conceding on the record here that Juvenile will not have to register as an adult sex offender.
Finally, we turn to the question whether Juvenile's adjudicated offense is "equal to or more severe than" federal aggravated sexual abuse as defined by 18 U.S.C. § 2241. The adjudicated offense here was that Juvenile violated § 566.062 by having deviate sexual intercourse with a person not yet age 14. The relevant portion of 18 U.S.C. § 2241 describes aggravated sexual abuse as "knowingly engag[ing] in a sexual act with another person who has not attained the age of 12 years." Therefore, because the age limitation of the sex offense for which Juvenile was adjudicated was 14, and the age limitation for the federal sex crime at issue was 12, we find that the offense for which Juvenile was adjudicated is not equal to or more severe than aggravated sexual abuse as defined in 18 U.S.C. § 2241. Therefore Juvenile was not misinformed when the court advised him that he will not have to register as an adult sex offender when he reaches age 21. Point denied.
*433 Conclusion
For the reasons stated above, we affirm the judgment of the juvenile court.
Sherri B. Sullivan, P.J., and Lawrence E. Mooney, J., concur.

All statutory references are to RSMo (2016) unless otherwise noted.

We note that Missouri's due process provision parallels its federal counterpart, and our courts have treated the two clauses as equivalent. See, e.g., State v. Rushing, 935 S.W.2d 30, 34 (Mo.banc 1996) (noting Missouri constitutional provisions cannot provide less protection than comparable federal ones), Belton v. Bd. of Police Comm'rs, 708 S.W.2d 131, 135 (Mo.banc 1986) (same).

For example, the right to a jury trial is not applicable to juvenile delinquency hearings. McKeiver v. Pennsylvania , 403 U.S. 528, 544, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971).

SORA is codified in § 589.400 et seq.

SORNA contains language similar to its Missouri counterpart. Therefore, cases analyzing SORNA are persuasive to our present undertaking. We note that SORNA uses the phrase "comparable to or more severe" as opposed to "equal to or more severe" when comparing certain statutes. However, that distinction does not affect our analysis.