In the Missouri Court of Appeals
 Eastern District
 DIVISION THREE
IN THE INTEREST OF: J.R. ) No. ED109245
 )
 )
 ) Appeal from the Circuit Court of the
 ) City of St. Louis
 ) Cause No. 2022JU-00248
 )
 ) Honorable Barbara T. Peebles
 )
 ) Filed: October 19, 2021

 OPINION

 J.R. (“Juvenile”) appeals the judgment adjudicating him delinquent after a bench trial

pursuant to § 211.031.1(3).1 The trial court found that Juvenile shot a firearm at two women and

discharged a firearm into a habitable structure--conduct that, had he been an adult, would have

constituted the crimes of assault in the first degree and unlawful use of a weapon. In his two

points on appeal, Juvenile challenges the exclusion of a video and the sufficiency of the

evidence. Exclusion of the video constituted prejudicial error. Therefore, we reverse and remand.

1
 Mo. Rev. Stat. 2000.

 1
 I. Factual and Procedural Background

 The Juvenile Officer put on the following evidence at the September 29, 2020 bench trial.

D.J.2 testified that she was asleep in her home at 12:30 p.m. on Sunday, May 30, 2020, when her

sister woke her up to tell her there were kids throwing things at her car and house. D.J. said there

were 20 or 30 kids out front throwing bottle rockets, water balloons, Jell-O balloons, and sticks.

She went outside and moved her car to the back of the house. Then D.J. saw Juvenile messing

with her car again and told him to get away from it. Juvenile told D.J. to send her sister out to

fight with his girlfriend. D.J. told him that was not happening.

 Shortly thereafter, Juvenile brought a chair up to D.J.’s front porch, sat down, and would

not leave when she asked. At this point, D.J. was standing inside her house looking out the door,

which was opened part way. She said that while Juvenile was sitting there, he showed her a gun

he had clutched in his pants. D.J. was on the phone with her friend, M.S., who lived nearby, and

asked her to come over. When M.S. arrived, Juvenile said he had been looking for her. D.J.

testified that at that point, Juvenile stepped out onto the street, pulled the gun from his waistband,

and held it in the air. Then, she said, “he shoots the gun.” After the shot was fired, D.J. said she

snatched M.S. and pulled her into the house, kept the door cracked about six inches, and then

fired her own gun--a .40 caliber--through that opening. D.J. testified that she saw Juvenile

shooting back at her and her house, and that another person was shooting also: “He shot multiple

times, and then someone else shot at me as well. So there [were] two people shooting at me.”

D.J. said the other person was “some girl named [J.]”3

2
 D.J. and M.S. are adults, but to protect the identity of the minors involved in the case, all parties will be referred to
by their initials.
3
 This girl was referred to at trial only by her first name.

 2
 The police arrived about 20 to 30 minutes after the shooting stopped. One girl among the

children outside of the house had been shot and was taken to the hospital.4 D.J. testified that

when the police brought Juvenile to her and asked if this was the guy, she said yes. She did not

tell the police anything about the girl shooter that day, claiming she was “too hysterical.”

According to D.J., Juvenile had been coming to her door showing her his gun and making threats

for weeks and he and other kids had been harassing her for months. She had never reported this

to the police.

 M.S. testified that she saw Juvenile pull a small black gun out of his pants right before

D.J. snatched her into the house. Once inside, M.S. laid on the floor and heard multiple gunshots

being fired. She did not actually see Juvenile fire the gun. M.S. testified that when the police

arrived, Juvenile was trying to walk away, so she told the police to stop him. She also testified

that she found out later there was another shooter, a girl, and that a neighbor had recorded the

incident. M.S. got the video a few days later and reported it to the police.

 D.J.’s teenage sister, R.S., testified that she had been in a fight with some girls prior to

the day of this incident and that, for a couple of months, Juvenile had been coming to D.J.’s

house trying to get R.S. to fight the girls again. R.S. testified that she was looking out the

window and saw Juvenile step to the street and “cock the gun back.” R.S. testified that “after

[Juvenile] got done firing the gun,” a girl with blue and black braids “picked up the gun and

fired, emptied out the whole clip into our house. And that’s when my sister fired back.” Several

short videos taken on R.S.’s phone from inside the house were admitted into evidence. None of

them show Juvenile or anyone else shooting at M.S., D.J., or her house. On one video, a boy is

4
 The charges against Juvenile did not include this girl’s injury, and the evidence at trial suggested she had been hit
by a bullet from D.J.’s gun.

 3
seen handing a chair to Juvenile. The rest of the videos depict chaotic screaming and crying

inside the home.

 The evidence technician officer who investigated the crime scene testified that she

searched D.J.’s house and porch, the walkway leading from the porch to the street, the street, and

the sidewalk area across the street. Thirteen cartridge casings fired from two types of guns were

recovered: seven 9mm casings were found in the street, and six .40 caliber casings were found on

the walkway, front porch, and inside D.J.’s house.5 Sometimes casings go missing--they can roll

or be kicked away--the officer said, but she had tried to be as thorough in her search as possible.

Only D.J.’s .40 caliber weapon was seized, no other gun was ever found. Photographs of the

ballistics damage to D.J.’s home were also admitted into evidence.

 Juvenile put on the following evidence. An investigating officer testified that after the

day of the incident, he received a video purportedly taken from inside a neighbor’s house. He did

not know who recorded it. The officer testified “it’s a bad video” and said he could not “really

tell what exactly is going on.” He agreed that the video shows somebody on the street shooting,

but he could not tell if that person was male or female. He also pointed out that the video is not

dated or time stamped.

 B.E., another teenager outside of D.J.’s house that day, testified that she was there during

the entire shooting incident. B.E. said that at first there was just arguing, then a girl grabbed a

gun from Juvenile’s pants and shot it once into the air, at which point D.J. started shooting into

the crowd of kids and hit a girl. “And then that’s when [J.], she started shooting at the house and

she let out all the bullets.” B.E. testified that she never saw the gun in Juvenile’s hand and never

5
 D.J. told police the day of the incident that she had only fired her gun once, and at trial claimed not to recall telling
them that nor whether she had actually fired more than once.

 4
saw him fire it. Though she was still there when the police arrived and knew they were taking

Juvenile into custody, B.E. did not tell them what she had seen.

 During B.E.’s testimony, Juvenile attempted to introduce into evidence the video taken

from the neighbor’s house. When shown the video exhibit, B.E. was asked if she had seen what

was on the video, and she said yes. Then she was asked, “Do you know what it shows?” Again,

B.E. said yes and started to describe what it showed when the Juvenile Officer objected, claiming

the video lacked foundation because it was unknown what day or time the video was recorded

and by whom and because the investigating officer had testified the video was not clear. The trial

court asked who took the video, and Juvenile represented that it was a neighbor but argued that it

did not matter that someone else created the video “if [B.E.] can testify to what is on the video,

that it represents fairly and accurately and completely what she saw that day.” The Juvenile

Officer also argued that because the video was taken from someone else’s vantage point, B.E.

would not be able to testify that it is a fair and accurate depiction of the scene.

 The trial court sustained the objection: “You can’t lay the foundation with this witness.

You need the person who took the video, first of all, in order to lay the foundation.” The trial

court permitted Juvenile to make the following offer of proof, via counsel’s narrative, as to what

was on the video:

 If the video was played for the Court, it would show that there was a girl in the
 street shooting a gun. [Juvenile] was running away from the gunshots. After the
 gunshots occurred, the girl in the video continues to walk around with a gun in her
 hand. You also would hear, if it was played, that [D.J.] shot several times, not just
 one time. And then you would also see [Juvenile] run back to the scene after his
 friend was shot to try to assist his friend who was injured at the time.

The trial court noted the offer of proof, and did not change the ruling.

 The trial court found beyond a reasonable doubt that Juvenile had committed assault in

the first degree because he attempted to cause serious physical injury to D.J. and M.S. by

 5
shooting at them and unlawful use of a weapon because he discharged a firearm into a habitable

structure. The trial court assumed jurisdiction over Juvenile and adjudicated him delinquent; the

dispositional hearing immediately followed. The trial court committed Juvenile to the custody of

the Division of Youth Services for appropriate placement and ordered restitution to D.J.6

 This appeal follows.

 II. Standard of Review

 In a juvenile delinquency proceeding, due process requires proof beyond a reasonable

doubt that the juvenile committed an act that would constitute a crime if committed by an adult.

In the Interest of J.L.P., 600 S.W.2d 47, 50 (Mo. App. E.D. 1980). As in other cases, evidentiary

rulings in juvenile cases are reviewed for abuse of discretion. K.B.C. v. Juvenile Officer, 273

S.W.3d 76, 78 (Mo. App. W.D. 2008). We will affirm the trial court’s ruling unless it was so

prejudicial that the juvenile was deprived of a fair trial. Interest of J.M., 588 S.W.3d 612, 620

(Mo. App. E.D. 2019). Stated another way, an improper evidentiary ruling is prejudicial if it is

outcome determinative. K.B.C., 273 S.W.3d at 78.

 III. Discussion

 In his first point on appeal, Juvenile argues the trial court misapplied the law--and

thereby abused its discretion--when it excluded the video on the grounds that a foundation could

not be established without the testimony of the person who created the video. He contends the

video was relevant and its exclusion was prejudicial error. We agree.

6
 We note that Juvenile was scheduled to be released from the custody of the Division of Youth Services on
September 29, 2021, before we took this case under submission. Because he was adjudicated delinquent for offenses
that would be felonies if he were an adult, parts of his juvenile record may be open to the public pursuant to §
211.321.2(2). This is a “significant collateral consequence for Juvenile into his adult life,” and therefore the appeal
is not rendered moot by his release. In Interest of N.R.W., 482 S.W.3d 473, 475 (Mo. App. E.D. 2016).

 6
 Foundation

 A proper foundation for the admission of a video requires the proponent to show that the

video is an accurate representation of what it purports to depict, which can be done via the

testimony of any witness familiar with the subject matter of the video through his or her personal

observations. State v. Brownlee, 501 S.W.3d 556, 559 (Mo. App. E.D. 2016) (discussing

foundational requirements for admission of photographs); see State v. Powers, 148 S.W.3d 830,

832 (Mo. App. E.D. 2004) (“The same principles that govern the foundation for admissibility of

photographs apply to the admission of videotapes”). Testimony from the creator of the video is

not required to establish the proper foundation for its admission. See Brownlee, 501 S.W.3d at

559. Nor does the witness need to know the circumstances surrounding the creation of the video

or “have observed the exact view of the subject matter depicted by the video.” State v. King, 626

S.W.3d 828, 841 (Mo. App. E.D. 2021).

 Here, B.E. testified that she had personally observed the entire shooting incident.

Therefore, she was competent to provide a foundation for admission of the video even if she did

not create the video, know of the circumstances of its creation, or view the shooting from the

exact same vantage point as the video. The trial court’s ruling to the contrary was a clear

misapplication of the law and abuse of its discretion.7 See Eichacker v. Eichacker, 596 S.W.3d

177, 184 (Mo. App. E.D. 2020) (holding that a misapplication of law resulting in the improper

7
 The trial court did not, as the Juvenile Officer insists, find that B.E.’s testimony as to foundational facts lacked
credibility. Rather, the trial court concluded B.E. was not competent to lay the foundation for this video. Therefore,
B.E. did not have the chance to testify that the video was an accurate representation of the incident. As the Juvenile
Officer points out, Juvenile’s offer of proof did not include a representation that B.E. would so testify, which is a
foundational fact that ordinarily would be required for an adequate offer of proof. See State v. Douglas, 304 S.W.3d
756, 763 (Mo. App. S.D. 2010). But because the trial court was well aware that Juvenile expected to be able to elicit
this particular testimony from B.E. and it would not have affected the court’s ruling regarding her competence to lay
the foundation for a video she did not create, including it in the offer of proof would have been futile. See, e.g., State
v. Bowlin, 850 S.W.2d 116, 118 (Mo. App. S.D. 1993); Hyde v. Butsch, 861 S.W.2d 819, 821 (Mo. App. E.D. 1993).
Under these circumstances, the issue is sufficiently preserved, and our review is not limited to plain error.

 7
exclusion of evidence is an abuse of discretion). This erroneous foundational ruling is only

reversible, of course, if the video was otherwise admissible--in other words, relevant--and its

exclusion prejudicial.

 Admissibility

 Evidence must be both logically and legally relevant to be admissible. State v. Barriner,

111 S.W.3d 396, 400 (Mo. banc 2003). Evidence is logically relevant if it tends to make the

existence of any fact of consequence more or less probable than it would be without the evidence

or if it tends to corroborate other relevant evidence bearing on a principal issue of the case. Id. at

400-01. “Logical relevance is a very low threshold.” Kappel v. Prater, 599 S.W.3d 189, 193

(Mo. banc 2020) (internal quotation marks and citation omitted). The Juvenile Officer agrees this

video meets that threshold.

 At first, all that can be seen on the video is window blinds. A voice on the video seems to

say both that “she got a gun” and “he got a gun.” A single gunshot is heard. A few seconds later,

after a bit of commotion by the videographer, the blinds are raised and the street scene below is

in view. A person walks into the street with a gun and then stands there firing the gun, while a

total of fourteen gunshots can be heard. Though the video is somewhat blurry at this point, it is

evident that the person shooting the gun has long hair and is not Juvenile (based on R.S.’s

identification of Juvenile in one of the videos admitted into evidence). The shooting stops, and

the video comes into better focus. It is now clear that the shooter is a girl with long braided hair.

She moves around with the gun in her hand for a few moments before walking out of view. At

that point, other people are seen going to a person who is lying on the ground, and the video

ends.

 8
 The video provided a recorded account of the incident in question and is, therefore, of

“supreme probative value.” State v. Davis, 318 S.W.3d 618, 640 (Mo. banc 2010). The video is

evidence that someone other than Juvenile was firing the gun at the time that fourteen gunshots

can be heard; at a crime scene where a total of thirteen cartridge casings were found, this

evidence tends to make it more probable that this other person fired most if not all of the shots

from that particular gun. And the video tends to undercut the Juvenile Officer’s theory that the

girl was merely an additional shooter. Of course, the video does not rule out the possibility that

Juvenile also fired the weapon at some point not seen on the video. But, as the Juvenile Officer

concedes, the video need not exonerate Juvenile in order to be admissible. And it need not be

conclusive evidence of anything. See State v. Richardson, 838 S.W.2d 122, 124 (Mo. App. E.D.

1992) (“[e]vidence need only be relevant, not conclusive”). The video also tends to corroborate

B.E.’s version of the events, which bears on the principal issue of which witnesses were to be

believed as to who fired the weapon and when. See id. at 124-25.

 Equally clear is the video’s legal relevance. Evidence is legally relevant if its probative

value outweighs its costs, namely, “prejudice, confusion of the issues, misleading the jury, undue

delay, waste of time or cumulativeness.” Barriner, 111 S.W.3d at 400. There is nothing unduly

prejudicial about this video, it could not have confused or misled the judge about the issues, and,

at only a few minutes long, it would not have caused undue delay or wasted time. Moreover,

contrary to the Juvenile Officer’s argument, the video is not cumulative to the investigating

officer’s testimony. The officer did not testify to the contents of the video in any substantive

way, claiming that he could not tell what was going on in the video except that “someone” was

shooting. There was nothing else in evidence that described what can be seen and heard on the

video. In any event, even if another witness had described what is shown on the video, that

 9
would not render the video itself inadmissible. See State v. Quick, 334 S.W.3d 603, 611 (Mo.

App. W.D. 2011); State v. Schneider, 736 S.W.2d 392, 403 (Mo. banc 1987).

 Prejudice

 The erroneous exclusion of evidence in criminal cases creates a rebuttable presumption of

prejudice, which both parties cite as applicable here. We agree. The presumption exists in

criminal cases because criminal defendants have the right to present a complete defense, as part

of the due process and fundamental notions of fairness guaranteed to them by the Due Process

Clause of the Fourteenth Amendment to the United States Constitution. See State v. Ratliff, 622

S.W.3d 736, 748 (Mo. App. W.D. 2021); California v. Trombetta, 467 U.S. 479, 485 (1984).

Although juvenile delinquency proceedings are civil, juveniles are nevertheless at risk of a

deprivation of liberty equivalent to criminal incarceration and, therefore, are similarly guaranteed

due process and fair treatment pursuant to the Due Process Clause. In Interest of A.C.C., 561

S.W.3d 425, 428–29 (Mo. App. E.D. 2018); see also In re N.D.C., 229 S.W.3d 602, 605 (Mo.

banc 2007). Like criminal defendants, juveniles’ rights under the Due Process Clause should

include the meaningful opportunity to present a complete defense. We discern no reason to hold

otherwise. Therefore, a presumption of prejudice arises when a trial court erroneously excludes a

juvenile’s proffered evidence from a delinquency adjudication proceeding.

 This presumption of prejudice is, of course, rebuttable with proof “that the error was

harmless beyond a reasonable doubt.” Ratliff, 622 S.W.3d at 748 (internal quotation marks and

citations omitted). In determining whether the presumption has been rebutted, we examine “the

facts and circumstances of the particular case” including the nature of the charge, the evidence

presented, and “the role the excluded evidence would have played in the defense’s theory.” Id.

(internal quotation marks and citations omitted). The presumption of prejudice is often rebutted

 10
because the excluded evidence would have been cumulative to other evidence or because the

evidence of guilt was overwhelming. See id. at 749.

 As discussed above, the video is not cumulative. Though the witnesses testified about the

existence of the girl shooter, none of them described the incident in the same way or to the same

extent that it can be seen and heard in the video. The video is an objective recorded account of

the incident, not merely a reiteration of the subjective accounts provided by the witnesses at trial,

as the dissent suggests.

 No argument is made that the evidence against Juvenile was overwhelming. The only

evidence connecting Juvenile to the act of firing the gun was the testimony of D.J. and R.S,

whose credibility was not immune from attack: both of them had a history with Juvenile; their

view of the shooting was from inside the house (D.J. was looking through a six-inch gap in the

door); their timelines were somewhat inconsistent with each other (as to when D.J. fired in

relation to Juvenile and the girl) and with M.S. (as to whether she was pulled into the house

before or after Juvenile fired); D.J. omitted and misstated key details when talking to police.

Resolving these credibility issues and the conflict between their testimony and that of B.E. was

the key to determining the outcome in this case. Because the excluded video provides a recorded

account of the incident and tends to corroborate B.E.’s version of the events, it would have

played a critical role in Juvenile’s defense both in terms of supporting his theory that he

possessed, but did not fire, the gun and further discrediting the other witnesses’ accounts. The

video need not exonerate Juvenile, as the dissent suggests, for us to conclude that it would have

been valuable to his defense and, therefore, not harmless error to exclude it.

 11
 In sum, we are not convinced beyond a reasonable doubt that excluding this video was

harmless. Due process and fundamental notions of fairness dictate that Juvenile must be granted

a new trial at which due consideration can be given to this evidence.

 Point I is granted, and we do not reach Point II.

 IV. Conclusion

 The judgment is reversed, and the case is remanded for a new trial.

 _______________________________
 Colleen Dolan, J.

Philip M. Hess, P. J., concurs.
Angela T. Quigless, J., dissents in a separate Opinion.

 12
 In the Missouri Court of Appeals
 Eastern District
 DIVISION THREE
IN THE INTEREST OF: ) No. ED109245
J.R.. )
 ) Appeal from the Circuit Court
 ) of the City of St. Louis
 )
 ) Honorable Barbara T. Peebles
 )
 ) Filed: October 19, 2021

 DISSENT

 I agree with the majority that the video was admissible and that any witness, here B.E.,

familiar with the event can lay the foundation.

 I respectfully dissent, however, as I find the error was harmless beyond a reasonable

doubt. See State v. Ratliff, 622 S.W.3d 736,742 (Mo. App. W.D. 2021). When examining the

facts and circumstances of this particular case, I find the video would have been cumulative to

other evidence, and thus the presumption of prejudice in excluding the video rebutted.

 Relevant here, the trial court had before it the testimony of D.J., R.S., both of whom

connected Juvenile to the act of firing the gun. Both also testified that a girl also fired the gun.

D.J. testified that Juvenile brought a chair up to D.J.’s front porch, sat down, and showed her a

gun he had clutched in his pants. When M.S., who lived nearby, arrived, D.J. testified that

Juvenile stepped out onto the street, pulled the gun from his waistband, held it in the air, and then
shot the gun. After the shot was fired, D.J. snatched M.S. and pulled her into the house. D.J.

testified that she saw Juvenile shooting back at her and her house, and that another person was

shooting also: “He shot multiple times, and then someone else shot at me as well. So there

[were] two people shooting at me.” D.J. said the other person was “some girl named [J.]”

 R.S. testified that she was looking out the window and saw Juvenile step to the street and

“cock the gun back.” She further testified that “after [Juvenile] got done firing the gun,” a girl

with blue and black braids “picked up the gun and fired, emptied out the whole clip into our

house. And that’s when my sister fired back.”

 Also before the court was the testimony of B.E., who testified that a girl grabbed a gun

from Juvenile’s pants and shot it once into the air. B.E., however, testified that she never saw

the gun in Juvenile’s hand and never saw him fire it.

 I agree with the majority’s depiction of the video. However, I find the video cumulative

to the testimony, and not helpful to Juvenile’s defense. I thus find its exclusion harmless. The

testimony was that both Juvenile and the girl fired the weapon. Defense counsel at trial argued

the video would show an alternate shooter, a girl. But this evidence was presented through the

testimony of D.J., R.S., and B.E. The majority notes that the video corroborates B.E.’s version

of events, and thus would have played a critical role in Juvenile’s defense. But, B.E. testified to

what she observed, and that evidence was before the court, for its consideration. The video,

showing a girl in the street shooting a gun, simply corroborates what witnesses D.J., R.S., and

B.E. said about a girl firing the weapon. The exclusion of evidence is harmless beyond a

reasonable doubt where the excluded evidence is cumulative of other evidence which was

admitted at trial. State v. Taylor, 588 S.W.3d 632, 637 (Mo. App. W.D. 2019). “A complaining

party is not entitled to assert prejudice if the challenged evidence is cumulative to other related
admitted evidence.” State v. Brandolese, 601 S.W.3d 519, 536 (Mo. banc 2020). “Cumulative

evidence is additional evidence that reiterates the same point.” Id.

 Furthermore, the video does not rule out the fact that Juvenile also fired the weapon. In

particular, the video does not contradict D.J. and R.S.’s testimony that they saw Juvenile fire the

weapon – testimony clearly credited by the trial court. While the majority finds the video

important to resolving credibility issues and conflicting testimony, the witnesses’ credibility did

not go unattacked, as suggested. Moreover, the credibility of witnesses and the weight to be

given their testimony is a matter for the trial court. In Interest of S.B.A., 530 S.W.3d 615, 623

(Mo. App. E.D. 2017). The trial court was free to believe and credit all, some, or none of these

witnesses’ testimony. Id. We defer to the trial court on such matters, and do not reweigh the

evidence. Id.

 The presumption of prejudice, if any, was rebutted. As there is sufficient evidence

against Juvenile, I would affirm the adjudication.

 _____________________________
 Angela T. Quigless, Judge